BROWN, administrator, &c. vs. JONES.

In January, 1861, B. being in the possession of a piece of land, belonging to R., which he was desirous of purchasing, entered into a parol agreement with J., by which J. agreed to contract with R. for the purchase of the land, in his own name, for B.'s benefit; B. agreeing to pay R. for the same. J. accordingly, on the 19th of March, 1861, entered into a contract with R. by which R. agreed to sell, and J. to purchase, said land, and pay $500 therefor, in three annual payments, with interest. This contract was for the use and benefit of B. The land, at the time, was wild and uncultivated. B. immediately commenced clearing, and making valuable permanent improvements thereon, and made payments to R. on the contract between R. and J. In 1862 B. agreed with his son, B. jun., to let him have the benefit of said agreement. Subsequently, B. as agent for B. jun. entered into another agreement with J. by which the latter agreed to advance and pay to R. the sum due for the purchase and take a deed to himself, and give B. jun. an agreement in writing to convey the land to him, and giving him time to make the payments. J. accordingly paid R. the balance due, for the land, and received a deed thereof, in his own name. In June, 1863, and again in November, 1863, B. as agent for B. jun. tendered J. $150 to pay upon the land, and requested him to give B. jun. a written agreement to convey the land to him, which J. refused. In January, 1864, after J. had received his deed from R., B., as agent of B. jun., tendered J. $580, that being the whole sum due, and requested him to convey the premises to B. jun., by a quit-claim deed, which J. refused to do. The improvements made by B., at the time of such tender, were of the value of over $250. B. also paid the taxes and assessments upon the land, during all this time, which were nearly equal to the value of the use of the land. In an action by B., as administrator of B. jun., against J., to enforce a specific performance of the parol agreement;

*Held* 1. That the money which J. advanced to R. to procure the title to the land was, in equity, merely money loaned to B. upon the security of the land. And that on the payment of that amount, with interest and expenses, B. was entitled to a conveyance of the land.

2. That J. was to be regarded, in equity, as a mere trustee of the title to the land for the benefit of B., or his assignee, with the rights of a mortgagee, for the unpaid part of the purchase money advanced by him to R.

3. That a case was clearly made out for the enforcement, in a court of equity, of the original parol agreement between B. and J.; there having been a sufficient part performance of said agreement, by B., to take the case of the statute declaring all parol trusts and contracts relating to land void, but authorizing courts of equity to compel a specific performance of such agreements, in case of part performance.

4. That the new agreement, made in behalf of B. jun. for the conveyance of the land to him, as a distinct and independent agreement, was within the statute of frauds. But that it operated as, and was in legal effect, an equi-

Brown *v.* Jones.

table assignment from B. to his son of his original rights; and was, in effect, a request from him to J. to convey the land to B. jun. in the execution of the original trust or agreement.

Where the question in dispute was whether the sum of $35 was paid by B. for the use of the land up to April, 1863, and was received by J. for that purpose, or to apply on the contract between R. and J., the latter, after testifying positively that he told B. that he would receive the $35 for the use of the land up to April, 1863, and that he made an entry in his cash book to that effect, was asked "what is that entry?" *Held*, that, it appearing that the witness had a distinct recollection of the facts, independent of the memorandum, evidence of the entry in the cash book was properly excluded.

THIS action was brought to compel a specific performance of a parol contract for the sale of twenty-five acres of land in Milo, Yates county. The action was commenced in February, 1864, in the name of Morris Brown, jun. as plaintiff. The action was tried before the court at a circuit court held in Yates county on the 5th day of April, 1864. After the trial, and before the decision, the plaintiff died intestate, leaving Morris Brown, the present plaintiff, his father and heir at law, him surviving. After the death of Morris Brown, jun. letters of administration were granted to the present plaintiff, upon the estate of the deceased, and the said Morris Brown was substituted as plaintiff, in his own right, and as administrator of Morris, jun. deceased. The facts as set forth in the complaint, and as found by the court, are substantially as follows: In January, 1861, Joseph W. Ryers owned the land in question, which at the time was in possession of Morris Brown, who at the same time was in possession, in the right of his wife, of the one hundred acres adjoining on the east. Said Brown, wishing to purchase said twenty-five acres, entered into a parol agreement with the defendant, by which the defendant agreed to enter into a contract with Ryers for the purchase of said twenty-five acres, in his own name, for said Brown — Brown agreeing to pay for the same to Ryers. In pursuance of which agreement the defendant, on the 19th March, 1861, entered into a contract with Ryers for the purchase of said twenty-five acres, by which Ryers agreed to sell

and the defendant agreed to purchase said land, and pay $500 therefor, in three annual payments, with interest from the 1st of April, 1861.   The land, at the time, was wild and uncultivated.   After entering into said agreement, Brown, with the knowledge and consent of the defendant, commenced clearing and making valuable permanent improvements thereon.   The agreement entered into between Ryers and the defendant was for the use and benefit of Brown, sen.   This is admitted by the answer.   In July, 1861, Brown, sen. with the knowledge and consent of the defendant, paid Ryers $35 on the agreement, as part payment of the money to be paid under said agreement with the defendant.   That in September or October, 1862, Brown, sen. still continuing in possession and continuing to make valuable improvements, entered into an agreement with his son Morris, jun. to let him have the benefit of said agreement.   Afterwards, and some time in October, 1862, Brown, sen. as agent for, and at the request of the said Morris Brown, jun. entered into a further agreement with the defendant, by which the defendant agreed to advance and pay Ryers the sum due for said purchase, and take a deed to himself, and give Morris, jun. an agreement in writing to convey said land to him, and giving him time to make the payments ; said Brown, jun. was to pay the defendant $150 as soon as he received his pay from the U. S. Government, he being then in the military service of the United States, and the balance was to be paid in annual payments of $50 each, with annual interest, with the privilege of paying the whole sum at any time.   Upon the payment of the sum advanced by the defendant, principal and interest, and the expenses paid by the defendant, the defendant was to convey the land to said Morris Brown, jun.   Said last mentioned agreement was made in the name of Morris Brown, jun. and for his use and benefit.   In pursuance of which said last mentioned agreement, and about the month of January, 1863, the defendant paid said Ryers for said land, and about July, 1863, received a deed from him for said twenty-five acres.   On the

27th December, 1862, and before the defendant had paid Ryers, the defendant called upon Morris Brown, sen. as the agent for said Morris, jun. and informed said Brown that he was about to advance said money to Ryers and obtain a deed, in pursuance of said parol agreement, and requested the said Morris Brown, as agent for said Morris, jun. to assist in raising the money, by furnishing a part thereof, whereupon Brown, sen. as such agent for said Morris, jun. paid the defendant $35 to apply on the said land contract, and which paid the interest to 1st April, 1863. In May, 1863, Morris, jun. received his pay, and placed in the hands of Morris, sen. as his agent, $150, to be paid over to the defendant in pursuance of said agreement. About the 1st of June, 1863, M. Brown, sen. as agent for Morris, jun. called upon the defendant and informed him that he had received the $150 to pay upon said land, and requested the defendant to receive the same and enter into said written agreement to convey said land to Morris, jun. according to said parol agreement, to which the defendant replied that he had not received his deed from Ryers ; he was willing to enter into said agreement, but would prefer not to do so until he received his deed from Ryers. Thereupon the entering into the written agreement was by the parties postponed until the defendant should receive his deed from Ryers. The $150 was retained by Brown, sen. until the written agreement was entered into, for the purpose of being paid upon said land. The last of June or first of July, 1863, the defendant called upon Brown, sen. the agent for Brown, jun. and informed him that he had received his deed from Ryers, and afterwards, in July, 1863, the defendant spoke to Brown, sen. as agent for Brown, jun. about entering into the written agreement for the sale and purchase of said land, in pursuance of the parol agreement, the defendant at the same time stating that all he wanted was the money paid by him, interest, and the costs and expenses of the deeds. It was then agreed that Morris Brown, sen. should draft a contract in pursuance of the parol

agreement, and when approved by the defendant, he would cause two copies to be made, to be executed by the parties. Soon thereafter Brown, sen. prepared such draft and handed the same to the defendant, a copy of which is set forth in the defendant's answer. The name of J. Smith Brown was put into the contract prepared, as one of the vendees, he being a brother of Morris, jun. and had written requesting an interest in said land, which was stated to the defendant, and agreed to by him. J. S. Brown never paid or furnished any part of the money for said purchase, and his name was omitted in the subsequent transactions relating to said land. In November, 1863, after the defendant had received his deed from Ryers, Brown, sen. as agent for Brown, jun. called upon the defendant and requested him to accept the $150 and give Brown, jun. a written agreement to convey said land to him, upon being paid the balance of the purchase money and expenses, which the defendant refused, assigning as a reason, that he did not consider himself under any obligations so to do. Brown, sen. as the agent for Brown, jun. continued in possession after the agreement of the defendant to advance the money to Ryers as aforesaid, with the knowledge and consent of the defendant, clearing and making valuable improvements, down to the time the defendant refused to accept the $150 and enter into a written agreement. On the 13th of January, 1864, Brown still being in possession of said land, as the agent for Brown, jun. did, as such agent, tender the defendant $530, that being the whole sum, principal, interest, costs and expenses due, and requested the defendant to convey the premises to Brown, jun. by a quit claim deed, which he had prepared ; the defendant refused. The sum tendered has been kept for the defendant ever since. The improvements at the time of such tender were of the value of over $250. In 1863 a public highway was laid through said premises and damages assessed at $35. In the summer of 1863 the defendant was building a house on lands adjoining, and asked Brown, sen. to let him enter upon said land and get

stone for a cellar wall, which consent was given, and the defendant's workmen entered upon said twenty-five acres and got some stone accordingly. All the taxes and assessments upon said land were paid by Brown, sen. during the time aforesaid, which were nearly equal to the value of the use of said land.

Upon the foregoing facts, and the pleadings, the court found as conclusions of law : That Morris Brown, jun. in his lifetime, and at the time of his death, was entitled to have the parol agreement between him and the defendant specifically performed, upon the payment of the sum tendered. That on the death of Morris Brown, jun. the plaintiff, Morris Brown, as heir at law, became subrogated to all the rights of Morris, jun. deceased, and was entitled to a conveyance for the land, upon payment of the sum tendered. That Morris Brown, as administrator of the deceased, was entitled to the $35 for the damages assessed for laying the highway, and if the same had been received by the defendant he was bound to pay the same over. Judgment was ordered accordingly, with costs.

Upon filing the findings and decision of the court, a judgment was duly entered accordingly, on the 31st of August, 1865, to which findings and judgment the defendant excepted, and appealed to the general term.

On the trial several objections were made and exceptions taken to the rulings of the court upon the reception and rejection of evidence, which are noticed in the opinion of the court.

*Geo. F. Danforth,* for the appellant.

*D. B. Prosser,* for the respondent.

*By the Court,* E. DARWIN SMITH, J. Upon the essential facts of the case, there is very little disagreement between the parties in this action. The complaint states that Morris

Brown, senior, being in possession of the twenty-five acres of land in question, and desirous of purchasing the same, and not being in a condition to do so himself, at the time, applied to the defendant and requested him to enter into an agreement with Ryers, the owner of the land, for the purchase thereof, for the use and benefit of him, the said Brown, which the defendant agreed to do, and subsequently did, and took a written contract for the sale to him of said land, from said Ryers, for the sum of $500, to be paid in three equal annual payments, with annual interest from the 1st of April, 1861, which contract was made and entered into by the defendant for the sole and only use and benefit of the said Morris Brown, senior. The defendant admits these facts substantially as stated, and says that the said Morris Brown agreed by parol to make the payments upon the contract, from time to time, as the same fell due thereon, and to save the said defendant from all trouble on account thereof, and that if he did not so make such payments, the defendant would have the land. The defendant also, in his answer, says that he, by parol, accepted the proposition made to him by the said Morris Brown, and in pursuance thereof, and relying upon the promises and assurances therein contained, soon thereafter entered into a contract in writing with the said Ryers, for the purchase of said land.

It is clear, therefore, and really undisputed and indisputable, that the land in question was purchased by the defendant in trust for the said Morris Brown, senior, and that the contract for the purchase thereof was made and taken and held by the defendant expressly for the use and benefit of the said Morris Brown. When the defendant afterwards took the title to said land, under the contract, it was in furtherance of, and in the execution of this trust. Such were the clear equitable rights of the parties, the said Morris Brown, senior, and the said defendant, in relation to each other, in respect to the land. But this contract between Brown and the defendant was by *parol*, and the defendant insists upon this objec-

Brown *v.* Jones.

tion in his answer, and sets up the statute declaring all parol trusts and contracts relating to land void, and claims the benefit thereof as a defense in this action. The same statute provides that nothing therein contained shall be construed to abridge the power of the courts of equity to compel the specific performance of agreements, in case of part performance of said agreements.

The question for us, therefore, is, whether a case is made, under this provision, for the interference of this court, as a court of equity, to enforce such parol agreement, upon the received and recognized principles of equity as administered in such courts in respect to parol agreements and trusts in relation to lands.

It appears from the proofs, and findings upon the facts, of the learned judge who tried the cause at the special term, that at the time when the parol agreement between Brown and the defendant for the purchase of said land was made, the land was wild and uncultivated, and that immediately after entering into said agreement with Ryers for the purchase thereof by the defendant, the said Morris Brown then being in possession of said land, with the knowledge and consent of the defendant, commenced clearing the land and making valuable and permanent improvements thereon, and that in the month of July, 1862, the said Morris Brown, with the knowledge and consent of the defendant, paid to the said Ryers the sum of $35, which sum was duly applied upon said agreement between Byers and the defendant as a part payment of the moneys due to the said Ryers thereon.

It further appears from the said findings, that on or about the month of September or October, 1862, the said Morris Brown made another agreement with the defendant to advance the money payable to Ryers on said contract and take a conveyance of the land and hold the same for his son, Morris Brown, junior, and convey the same to him on the payment of the purchase money, according to the terms of a con-

tract, to be thereafter executed by the defendant to the said Morris Brown, junior. And that subsequently, and on or about the month of July, 1863, the defendant paid up the contract to Ryers and took a deed of said land, the said Morris Brown advancing for his said son towards such payment, previously to the making of the same, the further sum of $35, to apply on said land contract with the said Ryers as part of the purchase money therefor, and which paid the interest thereon to the 1st of April, 1863. The value of the improvements so made upon said land, as above stated, at the time of the defendant's refusal to convey said land according to the request, as stated in said findings, amounted to and were of the value of $250, as stated in said findings. It is also stated in the said findings of the judge at special term, that during all the time of the making of the contract between the defendant and the said Ryers and Morris Brown, the said Morris Brown, senior, continuing in possession of said land, paid all the taxes of every description which were assessed or imposed upon the same, and which were nearly equal in amount to the clear net value of the use and occupation thereof. Upon these facts, it seems to me, a case is clearly made out for enforcement in this court of the original parol agreement between Morris Brown, senior, and the defendant. The new agreement made in behalf of the son of Morris Brown, for a conveyance to him of said land, as a distinct and independent agreement, I think is within the statute. But it operated as, and was in legal effect an equitable assignment from Morris Brown to his said son, of his original rights, and was in effect a request, the said arrangement having been made by him in person, from him to the defendant to convey the land to Morris Brown, junior, in execution of said original trust or agreement. This original agreement was partly performed by payment of $35 interest due April 1, 1862, by the making by the said Morris Brown of permanent improvements on the land worth $250, and by

Brown *v.* Jones.

the payment of $35 in December, 1863, the taxes thereon assessed from time to time.

The original cost of the land was $500, and the permanent improvements added fifty per cent to this value and cost. It would therefore be a clear fraud to deprive Morris Brown, or his son as his assignee, of the benefit of these improvements, and it is upon this principle, chiefly, that courts of equity give relief, in this class of cases. (*Story's Equity*, §§ 759, 760, 61, 62.) Brown was in the possession of the land. His possession was recognized by the defendant under the parol contract. With his knowledge and consent, Brown cleared up and fenced the land, and made improvements thereon of a permanent character, such as were clearly made upon the assumption that they were to be for his own benefit, and that he was, or was to be, the owner of said land, and enjoy the use and benefit of said improvements. There is no other ground or reason why they were made. They can not be accounted for in reference to any other consideration, cause or motive, except the contract between Brown and the defendant. The defendant Jones, therefore, it seems to me, must be regarded, in equity, as a mere trustee of the title of this land, for the benefit of Morris Brown or his assignee, with the rights of a mortgagee, for the unpaid part of the purchase money advanced by him to Ryers. The case is quite similar, in principle, to that of *McBurney* v. *Wellman*, (42 *Barb.* 400.) In that case McBurney took the title of the land of which Wellman held a contract, to help the latter, and under an agreement to give a contract of sale and time of payment. We held that he was a mere trustee of the title with the rights of a mortgagee, in respect to the moneys advanced by him for the benefit of Wellman.

The money which the defendant advanced to Ryers to procure the title to the land in question in this action was in equity merely money loaned upon the security of the land. On the payment of that amount, with interest and expenses, the plaintiff was clearly entitled to a conveyance of the land.

But the case presents an exception in respect to this in the exclusion of testimony, which remains to be considered.

The defendant testified that on the 27th of December, he called upon M. Brown, and told him he did not want this payment (being the first payment on the contract to Ryers) to lie along any longer, and that he had concluded to pay it up, and wanted $35 of him. He said he would pay it for Morris Brown, junior. "I (the witness) said I would receive it for the use of the land up to April, 1863, and I made an entry in my cash book to that effect." The witness had previously testified that he kept a cash book and balanced it once a week, and had done so for twelve or fourteen years. The witness was then asked "What is that entry?" This question was objected to, and the objection sustained, and the defendant's counsel excepted. The defendant's counsel then offered to show the entries in the witness' cash account by his cash book. To this the plaintiff's counsel objected and the objection was sustained, and the defendant's counsel duly excepted. The offer to read this entry from the cash book of the witness was not, in the absence of all recollection of the facts by the witness, to prove the fact of such an entry, or the fact proved by such entry. The witness recollected the facts distinctly, and testified positively that he told Brown that he would receive the $35 for the use of the land up to April, 1863 ; and that he made an entry in his cash book to that effect. . The question in dispute was whether this $35 was paid and received for this purpose, or to apply on the contract to Ryers, as testified to by Brown. If the defendant had had no distinct recollection of the payment or receipt of the money, and had sought to read the entry in said cash book to prove such receipt or payment, the entry would have been clearly admissible, within the cases of *Guy* v. *Mead,* (22 *N. Y. Rep.* 462,) or *Halsey* v. *Sinsebaugh,* (15 *id.* 485.) Formerly the rule was, in this state, that entries in books of account, diaries or other written memoranda, might be referred to, to refresh the recollection of the witness, and not

Brown *v.* Jones.

otherwise, and that the witness must then state what his recollection, thus refreshed, was upon the subject of inquiry. This rule operated, many times, to exclude testimony, from an entire failure of the witness to recollect any thing on the subject further than that he made the entry or memorandum at the time of the transaction, and that it was then true. In such cases, now, the memorandum itself may be read in proof of the fact in dispute, as independent testimony. But in such cases Judge Selden, to whom is due particularly the assertion—if not the establishment—of the present rule, said, in *Russell* v. *The Hudson River Railroad Co.* (17 *N. Y. Rep.* 140,) "It however is an indisputable preliminary to the introduction of such memorandum in evidence that it should appear, as it did in *Halsey* v. *Sinsebaugh,* (*supra,*) that the witness is unable with the aid of the memorandum to speak from memory, as to the facts." In that case it appears, as the judge says, that the witness had a distinct recollection of all the facts, independent of the memorandum, and it was held that the latter was therefore improperly admitted. Such are the precise facts in this case, and the rulings at the circuit were in precise accordance with the decision of the Court of Appeals in this case of *Russell* v. *The Hudson River Railroad Co.* But I do not think if the entry had been read, it would have materially affected the case, or would have been likely, in any degree, to have changed or influenced the findings of facts of the learned judge upon this question. The witness Jones had testified positively as to the facts sought to be proved, and that he made an entry in his cash book to that effect. The fact of the making of this entry in question, at the time, was therefore clearly proved, and the substance of the entry, and without objection. The reading of the entries could have been proposed and offered for no other purpose than simply to corroborate the testimony of the witness on this point, and if it had been strictly admissible for that purpose, yet I hardly think it would, under the circumstances of the case, be jus-

tifiable to grant a new trial to correct an error really so non-essential.

Upon the whole case I think we must hold that it was properly disposed of at special term, and the judgment there rendered should be affirmed with costs.

Judgment affirmed.

[MONROE GENERAL TERM, September 3, 1866. *Welles, E. D. Smith* and *Johnson,* Justices.]