SAMUEL E. EDWARDS, *et al.*, v. ALVINA FRY.

1. PAROL CONTRACTS FOR SALE OF LANDS—*when Specific Performance decreed.* A vendee in a parol contract for the purchase of lands, who has paid a portion of the purchase-money, and made lasting and valuable improvements on the land, may obtain a decree for a specific performance of the contract, although he was at the time of the contract already in possession of the land.

2. ———— *Possession; Proof of Contract.* A delivery of possession at the time of the contract is evidence of the contract, and without such delivery the vendee may be put to the necessity of clearer proof of the fact of the contract.

3. HOMESTEAD—*What it is; Facts—Intention—Law.* E., in November 1865, purchased forty acres of land outside the limits of any city or town. At the time of his purchase a railroad track crossed the land, dividing it into two pieces, one of ten acres. In February 1866 he moved his family onto the thirty-acre tract. The same month he made a parol contract of sale of the ten-acre piece to F., who had been living on the same at the time and ever since E. bought in November previous. F. remained in occupation under such parol contract without question until November 1, 1869. When E. bought, he intended to make the whole forty acres his homestead, and had no other land: *Held,* that the ten-acre tract never became a part of the homestead of E. within the terms of section 9, article 15, constitution of Kansas.

4. DESCRIPTION OF LAND; *What is sufficient.* A description like this—ten acres in a certain section named, lying south of a certain railroad track—is sufficient, if there be but ten acres in such section south of such track.

### Error from Leavenworth District Court.

ALVINA FRY brought her action against *Samuel E. Edwards* and *Mary A.* his wife to compel them to specifically perform an alleged contract for the sale of a tract of land. The petition alleged that the defendants "entered into an agreement with the plaintiff whereby they agreed to sell and did sell to the plaintiff the following tract of land, to wit, ten acres of land situate upon the south side of the Kansas Pacific railway track, being the southeast corner of the S.E.$\frac{1}{4}$ of the S.W.$\frac{1}{4}$ of section 26, township 10, range 21, * * * and to convey the said premises to the plaintiff in fee simple, by deed of general warranty, on the payment of the said sum of $125," etc., and that defendants "under said contract of sale

27

delivered to the said plaintiff the possession of said premises," etc., and that she had been in possession ever since, had paid $84 of the purchase-money, and was ready and willing to pay the remainder, and praying that defendants be decreed to convey, etc. The defendants denied the making of any such contract, as well as all other of the allegations in said petition, and relied on the "homestead law." The case was tried at the May Term 1870. The findings of fact made by the court show that "prior to the beginning of this suit, the plaintiff tendered to the defendant Samuel E. Edwards forty-one dollars in money, and demanded of him a deed of said ten-acre piece of land from himself and wife, but he refused to accept said money so tendered as aforesaid, and refused to give the plaintiff any deed of conveyance of the said piece of land sold to her as before stated." The other facts are sufficiently stated in the opinion. The district court gave judgment in favor of the plaintiff, and the defendants bring the case here by petition in error.

*Clough & Wheat*, for plaintiffs in error:

On the trial Mrs. Fry was, against the objections of the plaintiffs in error, permitted to prove an *oral contract*, in violation of the statute of frauds. The evidence tended to show that Edwards intended to occupy the whole of the forty-acre tract as a homestead at the time he commenced to reside thereon; but the court, though thereto requested, refused to find either way on that question. And the court also refused to find whether Edwards intended to occupy the whole forty as a homestead at any time after he commenced to reside thereon.

1. Plaintiffs in error claim that they are shown by the conclusions of fact found to be entitled to retain all of the forty-acre tract, including the ten acres so recovered from them by said Fry, as a homestead, unless, and until the same shall be alienated by *their joint consent;* and that an alienation *by compulsion*, or by effect of said judgment, which was not at all by or with their consent, is not *such* an alienation.

From § 9, art. 15 of the constitution, it will be seen that the *alienation* must be with the *consent* of the husband and wife. Now we submit it to be absurd to pretend that an alienation only by or in pursuance of a compulsory power, to the making of which the parties object by all the means and with all the force they can, is an alienation with consent; and if it be not, then, of course, it follows that the district court should not have ordered the conveyance made, but, on the contrary, should have given Samuel E. Edwards judgment for possession of the ten acres. (Of course an agreement to sell or convey is neither an alienation or conveyance.) 5 Kas., 239, 597. That the matter of the railroad track running over the forty acres makes no difference so far as the homestead question is concerned, see 37 Cal., 167–179.

That the possession of the Edwards extended over the whole tract, see 18 Texas, 416; 14 Ill., 244; 3 Wash. on Real P., 118, 137, 139; 38 Vt., 344; Comp. Laws 1862, 354, § 1; 32 Ill., 62.

2. Plaintiffs in error claim that it does not appear from the conclusions of fact found, that they, or either of them, ever made an agreement *in writing* for the sale of said ten acres, and that for that reason, independent of any other, the district court erred, and they are entitled to the judgment they ask for. (Statute of Frauds, § 5, Comp. Laws 1862, p. 569, and § 6, Gen. Stat., p. 505.) We do not suppose this claim would be disputed if it were not that Fry claims she has taken the case out of the statute of frauds by possession, etc. We submit this has not been done. It appears from the facts found, that Fry was residing on the ten acres before and at the time when the pretended agreement to sell it was made. Where possession of a claimant for specific performance is a mere prolongation of an anterior possession, that such case is not taken out of the statute of frauds, see 5 Kas., 402; 1 Lead. Cases in Eq., 724, 732, 735, 739; 11 Ohio, 265; 18 Ohio St., 202. Possession to avail for such purpose must be taken in pursuance of a right growing out of or given by the contract relied on: 5 Kas., 402; 1 Lead. Cases in Eq., 729,

730. And therefore we claim Fry was not entitled to a specific performance. The statute of frauds may be relied on as a defense as well under a general denial as under any other answer, as that statute is a rule of evidence, not of pleading: 5 Kas., 263; 21 Ind., 437; 3 A. K. Marshall, 57; 8 Metc., 59; 9 Minn., 88; 1 Chitty's Pl., 301.

3. The said ten acres are part of a forty-acre tract that Samuel E. Edwards bought from Hungerford. The wife, Mary A. Edwards, has no interest in the land, except because of the marital relation, the homestead, etc. That a wife cannot be compelled to execute a contract for sale of her husband's lands, see 20 Ill., 137; 6 Wendell, 10; 17 Ohio, 105; 10 Paige, 342; 22 Wis., 501; 6 Texas, 102. Ch. 141, §§ 1 and 10, Comp. Laws 1862, was in force when it is claimed plaintiffs in error made the agreement, and continued in force until it was supplied by ch. 62, Gen. Stat. 1868. That neither those sections, or that law, nor any other statute, has changed the law from being as shown by the cases last cited, so far as such matters connected with the husband's lands are concerned, see 17 Mich., 465. A wife can only execute deeds or sell or alienate lands in the form, etc., provided by law. From among numerous cases sustaining this proposition we cite the following: 17 Mich., 465; 36 Ill., 462; 28 Texas, 532; 15 Ill., 123. And we claim that Mary A., the wife, was not, and could not be, bound in any manner by the pretended sale, whether the ten acres was part of a homestead or not, and if it was part of a homestead then if for any reason she was not bound, of course her husband was not.

4. We claim that the judgment is void for want of a sufficient description of the land ordered to be conveyed. See 6 Selden, 509, 530; 32 Mo., 79; 34 id., 579; 13 Wis., 643; 9 Ohio St., 599; 14 Howard, 76; 4 Peters, 349; 5 id., 457; 3 B. Mon., 368; 24 Ill., 647; 27 Ala., 437.

*H. M. Herman,* for defendant in error:

1. Equity will enforce a parol agreement, at the instance of the party to it who has fulfilled his part, where it may be

inferred that fraud will result from a refusal to decree performance. 14 Vesey, 386; 2 Story Eq. Jur., §§769, 760; Willard Eq., 244; 36 N. Y., 327; 26 Tex., 293; 2 Atkinson, 100; 3 id., 1; 51 Barb., 306; 22 Iowa, 378. Especially under the same circumstances, as in this case. 27 Ill., 93; 21 Ark., 137; 41 Barb., 619.

Part performance of the parol agreement takes it out of the statute of frauds. This is too well settled to need the citation of any authorities, yet see 13 Conn., 478; 5 Kas., 402.

If the possession has been taken without the consent, yet if the owner afterwards allow the stranger to remain in possession, this will operate as an act of part performance. Fry on Spec. Perf., 258; 18 Ves., 328; 1 G. and S., 34; Peck, 443. If the vendee makes valuable improvements on the premises this is sufficient to satisfy the statute. 1 Blackf., 28; 4 id., 91, 383; 2 Scam., 218; 3 Ves., 378. Or makes part payment of the purchase money. Har. Ch., 124, 532.

2. The plaintiffs in error claim the land as a homestead. How can it be when it never was occupied by them? But admitting for the sake of argument that it was, it can be alienated by the husband with consent of the wife, which was done. Constitution, art. 15, §9; 6 Tex., 116. The sale to Mrs. Fry, and her possession of the ten acres, was a delivery to her of the land; and a sale and delivery by the husband, with consent of the wife, is an abandonment of the homestead-right, by which it is lost. 5 Minn., 337; 7 id., 520. Where a married woman acts and speaks by her husband his declarations and acts are hers, and unless she disproves and dissents are deemed hers: 51 Barb., 322. The sale of that portion of the land pretended to be claimed as a homestead, accompanied by possession, is an abandonment of the homestead claim to that portion as to the vendee; and the failure of the wife to consent to the sale or join in a deed after abandonment of that portion of the homestead furnishes no ground for withholding a decree. 36 Ill., 248, 437; 27 Texas, 450. The parol sale having been recognized and adopted by Mrs. Ed-

wards, she was bound by it. Chitty on Contr., 202, 359. And Mrs. Fry, having continued in possession under purchase from Mr. Edwards with the consent of his wife, and made lasting and valuable improvements, and having paid the purchase money, could enforce specific performance. 1 Lead. Cases in Eq., 719.

The opinion of the court was delivered by

BREWER, J.: This was an action to compel a specific performance of a parol contract to sell land. Payment of about two-thirds of the purchase-money, and tender of the remaining, possession, and the making of valuable and lasting improvements since the contract, with the knowledge of the vendor, were the grounds upon which a decree was asked. The district court found the facts as alleged, and rendered a decree accordingly. Plaintiffs in error, defendants below, allege in error, first, that no specific performance should have been decreed, because, at the time of the parol contract the vendee was already in possession. In other words, delivery of possession is essential to the validity of a parol contract to sell land, and delivery being impossible where possession is already held, a parol contract to sell to one already in possession can never be enforced. We do not so understand the law. A parol contract to sell land, as a contract, is 1. Parol contracts always void, not because of any immorality or for sale of lands. illegality, it is true, but because the law does not recognize such method of transferring title to real estate. Part performance takes such a case out of the statute of frauds, not because it furnishes any greater proof of the contract, or because it makes the contract any stronger, but because it would be intolerable in equity for the owner of a tract of land to knowingly suffer another to invest time, labor, and money on that land, upon the faith of a contract which did not exist. Part performance, working injury to one party, unless followed by full performance, is necessary to enforce performance by the other. Equity bases its right to interfere upon the ground that without its interference injury and

wrong will result, and not on the ground that it is morally right that men should perform their contracts. "The ground of the relief in chancery," says Chancellor Kent, in *Parkhurst v. Van Cortland*, 1 Johns. Ch. 274, "is the fraud in permitting a parol agreement to be partly executed, and in leading a party to expend money in the melioration of the estate, and then to withdraw from the performance of the contract." In 1 Leading Cases in Eq., 723, the editor thus lays down the law: "A party who has permitted another to perform acts on the faith of an agreement, shall not insist that the agreement is bad, and that he is entitled to treat those acts as if it had never existed." Also, see cases cited by the editor. It will readily be seen from this what part performance will take the case out of the statute. Payment of the purchase-money will not, for the money can be recovered by action. Delivery of possession will, for without the contract the party entering will be a trespasser, and, if the vendor be permitted to deny the sale, liable to an action of trespass. *A fortiori* will delivery of possession, and the making of lasting and valuable improvements with the knowledge of the vendor. With equal reason should payment of the purchase-money and the making of lasting and valuable improvements with like knowledge, be sufficient to uphold the sale. Such a case comes clearly within the principles laid down. The vendee is led on "to expend money in the melioration of the estate," and then told that he has no interest in such estate. One needs no precedent to justify him in asserting this to be a fraud. Delivery of possession is often a strong circumstance to prove the contract, for an owner

2. Delivery of possession; proof of contract. would rarely deliver possession of his real estate to a stranger except under some contract. But the contract may be proved without that circumstance. Here, it is found. The manner in which possession is held often discloses under what claim of title it is held. A change in the manner of holding may indicate a change in the claim of title almost as clearly as a delivery of possession. And an acquiescence by a previous owner and landlord, in the manner of holding,

may show his recognition of a sale. The change 'in the manner of holding should be such as is referable only to the fact of a sale, and not merely to a continuance of the tenancy. Browne in his work on the Statute of Frauds, § 478, says: "The rule which controls all cases where possession is relied upon is, that merely taking or holding possession is of itself nothing. The question is, *quo animo* it is taken, or held; and this is not allowed to be answered by parol proof of the agreement between the parties. But in cases where a tenant continues in possession under an alleged agreement for a new tenancy, it is answered by proof of any *act* on his own part done with the privity of the owner of the fee, which is inconsistent with the previous holding, and is such as clearly indicates a change in the relation of parties." A party in possession loses all the benefit of a delivery of possession as evidence of the alleged parol contract, and may therefore be put to clearer proof thereof; but if it is clearly established *aliunde*, he may have that contract enforced. 1 Leading Cases in Eq., 724– 726; *Mahon v. Baker*, 26 Penn. St., 519; *Brown v. Jones*, 46 Barb., 400; *Spear v. Owendorf*, 26 Md., 37.

Again, plaintiffs in error claim that this land was a part of their homestead, and that therefore under the constitutional provision concerning homesteads (§ 9, art. 15, const. of Kansas,) a parol contract to sell it could not be enforced. The district court found that the defendants Edwards and his wife "jointly entered into and made" this parol agreement. The testimony abundantly supported this finding. The plaintiff swore positively to the making of the agreement by both the defendants, and was corroborated as to Samuel E. Edwards by many witnesses. Mr. Edwards while on the stand was not questioned as to the contract, and Mrs. Edwards was not a witness. We need not however investigate the question here suggested, for in our opinion this land never formed a part of the defendant's homestead. The tract was one of about ten acres situated in the southeast corner of a forty-acre tract, and was separated from the remaining portion by the road-bed of the Kansas Pacific

3. Homestead; alienation.

railroad.   In November 1865 the forty acres belonged to one S. R. Hungerford.   At that time the plaintiff occupied this ten-acre tract as tenant-at-will of Hungerford.   During that month Edwards bought the forty acres, and in February 1866 moved onto that portion of the forty lying north of the railroad track.   During the same month he and his wife made the parol contract with plaintiff.   He never was in the actual occupation of the ten acres in dispute.   True, he had but the forty acres, and intended when he bought it to make the whole tract his homestead.   At least that is his testimony, and there being no counter evidence it must be taken as proved, though the district court declined to find upon that fact, probably because it was thought immaterial.   The possession of the plaintiff, commencing before the purchase by defendants, continued unquestioned, and with the assent of defendants, until after the commencement of this suit in November, 1869.   Under these circumstances we do not think this ten-acre tract ever properly became a part of the defendants' homestead.   We know the spirit which animates the people of Kansas, the makers of our constitution and laws, on this homestead question.   We note the care with which they have sought to preserve the homestead inviolate to the family.   We have no disposition to weaken or whittle away any of the beneficent constitutional or statutory provisions on the subject.   We know that the purchase of a homestead, and the removal onto it, cannot be made momentarily cotemporaneous.   It takes time, for a party in possession to move out, and then more time for the purchaser to move in. Repairs may have to be made, or buildings partially or wholly erected.   Now, the law does not wait till all this has been done, and the purchaser actually settled in his new home, before attaching to it the inviolability of a homestead. A purchase of a homestead with a view to occupancy, followed by occupancy within a reasonable time, may secure *ab initio* a homestead inviolability.   Yet occupation is nevertheless an essential element to secure this inviolability.   "A homestead * * * occupied as a residence by the family," etc., is the

language of both constitution and statute. Here the defendants never occupied this ten-acre tract, but finding it in the possession of a third party, left it in her possession, without questioning her right, for four years; and finding her a tenant, made her a vendee during the same month in which they commenced their occupation of the remainder of the forty acres. To hold that this ten acres ever fell within the terms, "occupied as a residence by the family" of Edwards, seems to us trifling with both law and language.

It is further objected that the description is insufficient. It is described as "ten acres of land situate on the south side of the Kansas Pacific railway track, being the southeast corner

4. Description of lands; sufficiency of. of the southeast quarter of the S.W.$\frac{1}{4}$ of sec. 26, T. 10, of Range 21, Leavenworth county, Kansas." It appears from the finding of the court that south of the railway, and within said forty-acre tract, were "ten acres and a small fraction of an acre." Whether this fraction was so small as to come within the rule, de minimis non curat lex, the finding does not disclose. Turning to the testimony, and the party who surveyed the land testified, that there was "about ten acres south of the railway, but could not tell the exact amount without his notes." The plaintiff testified that defendants sold her the land lying south of the railway as ten acres. We think there will be no difficulty in determining what land is covered by the decree.

These being the only important questions in the case, the judgment of the district court must be affirmed.

VALENTINE, J., concurring.
KINGMAN, C. J., dissenting.

VALENTINE, J.; I concur in the decision of this case; but I do not wish to express any opinion upon the question whether the ten acres of land occupied by the plaintiff below was ever a part of the homestead of the defendants below or not. I think that there was such a "joint consent of husband and wife" at the time the contract for the land was made, and during the time that the plaintiff below was holding

possession of the land, and making lasting and valuable improvements thereon, under this contract, and during the time that the plaintiff below was paying for the same, (which was partially done by washing for the defendants,) that even if the land was a part of the defendants' homestead the defendants thereby so far alienated the same in equity that a court of equity has power to and will enforce a completion of the alienation by enforcing a specific performance of the contract. Judgment affirmed.