NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.—JANUARY, 1877.

## GREEN *v.* GREEN.

### *In the matter of the Estate of* J. H. GREEN, *deceased.*

Shortly before his death, the decedent hired premises for three years, by parol agreement, a lease being drawn up, but not signed; and he entered and made valuable improvements.

*Held,* that the lease being enforceable in equity, should be deemed an asset, for the whole term.

An administrator who renews or continues, in his own name, a lease held by the decedent, may be required to account for its full value as an asset.

Interest should be charged on such value only after the expiration of eighteen months from the issue of letters.*

THIS proceeding was instituted by the children, and next of kin of J. H. Green, deceased, to compel an accounting by the administrator, and the payment of the distributive share of the applicants.

An account was rendered, to which objections were filed, and a reference was had, and the referee made and filed a report.

To this report, the next of kin excepted, because the auditor declined to charge the administrator with the sum of $1,500, inventoried for a certain lease with interest thereon from the date of the inventory.

The facts appear to be as follows: The intestate entered into an agreement, which was verbal, for a lease for three years, of premises in 8th Avenue, New York, with one Wheeler. A written lease was drawn up, and contained certain covenants for expensive repairs by the tenant, but it was never signed by the parties, and remained in the lessor's hands.

---

* See *Gillespie* v. *Brooks, ante* p. 392.

The decedent, however, went into possession of the premises, and made expensive repairs, and paid rent until the time of his death, which occurred before the end of the first year.

When the administrator was appointed, at his request, the landlord made a memorandum at the foot of the unsigned lease, giving substantially the same privileges to the administrator by name, and the paper which was delivered to the adminstrator was signed by the lessor, and that delivered to the lessor was signed by the administrator, in his own name, without adding "Administrator."

The administrator, under this arrangement, remained in charge of the premises, paying rent, and rendered accounts to the lessor, signed by him as administrator.

On the part of the administrator, it was claimed that as the lease was unsigned, the tenancy was only valid for the first year, and that the estate was only entitled to the benefit for the balance of the first year after the decease of the intestate, and that it was chargeable with the amount of the repairs made by the administrator pursuant to the terms of the agreement, during the remainder of the year, which practically takes from the estate, the amount at which said lease was inventoried, it having been included in the inventory, upon the assumption that it continued for three years.

On the part of the next of kin, it was claimed that the administrator having taken possession under the memorandum, it was for the estate, and that he took it in the interest of the estate, and that he should be charged with the appraised value, and with interest thereon from the date of the inventory.

H. Fox, *for the administrator.*

McDaniel, Lumis & Souther, *for next of kin.*

THE SURROGATE.—It seems to be quite obvious that if the lease in question had been duly executed, and in all respects valid, the estate would have been entitled to its value, and the fact that the intestate went into possession, and made valuable and expensive improvements under a verbal agreement, with the knowledge and permission of the landlord, renders it highly equitable that the lease for the whole term should be credited to the estate. It was such an agreement as equity would have required to be executed specifically, for the occupancy, and making of the improvements by the intestate upon the faith of a continuance of the lease for three years, was such a part performance, as in my opinion took the case out of the statute of frauds.

In *Parkhurst* v. *Van Cortland* (14 *Johns.*, 15), it was held, after an elaborate examination, that persons who went into lands, and made improvements, had so partly performed the terms of the agreement as to take the case out of the statute, and that the court would decree a specific performance of the agreement.

In *Traphagen* v. *Traphagen* (40 *Barb.*, 537), it was held that in an action of ejectment the defendant might rely upon the equitable defence that he had entered into possession under a parol contract for the purchase and conveyance of the premises, and remained in possession, and fully performed the agreement on his part; and would be regarded as the owner of the land, and entitled to the specific performance of the agreement.

In *Bennett* v. *Abrams* (41 *Barb.*, 619), it was held, that where possession had been taken by both parties, under an oral agreement for exchange of land, and one of them had fully performed on his part, and the fairness of the agreement was not assailed, he might maintain suit in equity to enforce a specific performance of it by the other party.

In *Malins* v. *Brown* (4 *N. Y.*, 403), it was held that where a party had paid money upon a contract within the statute, and the delivery of the money would not restore him to his former situation, he was entitled in equity to a specific performance of the contract. (*Brown* v. *Jones*, 46 *Barb.*, 400; 1 *Story Equity Jur.*, § 763.)

Under these authorities, I entertain no doubt that the intestate's estate, at his death, was entitled to the benefit of the lease in question for the balance of three years.

In *Mitchell* v. *Reed*\* (61 *N. Y.*, 123), it was held that a member of a copartnership cannot during its existence, without the knowledge of his copartners, take a renewal of a lease for his own benefit of premises leased by the firm and upon which it has made valuable improvements, and the joint efforts of the members made the good will valuable, and enhanced the value of the premises, and this, although the term of the renewal lease did not begin until after the copartnership has expired by its own limitation. Commissioner DWIGHT says: "A guardian, we may suppose, holds a lease in his official character, which is to expire at his ward's majority. While the relation of guardian and ward exists, he takes a lease to himself to commence at the termination of the existing lease. Could that be sustained? Has he not profited by the trust relation? When he takes a lease to himself, can a tenable distinction be taken between one commencing immediately, and one beginning at a future day, even though that day be postponed until the trust relation expires? The sound rule is, that he cannot make any profit to himself from a secret transaction initiated while the relation of trustee and *cestui que trust* exists, no matter when it springs into active operation."

---

\*Reversing 61 *Barb.*, 310. See also *Struthers* v. *Pearce* (51 *N. Y.*, 357).

In *Gardner* v. *Ogden* (22 *N. Y.*, 327), numerous authorities are examined by Mr. Justice DAVIES, and the principle announced is, that a trustee can never be a purchaser, and a guardian, trustee, or other person standing in the relation of a fiduciary capacity, cannot deal with, or purchase the property in reference to which he holds that relation. (*Forbes* v. *Halsey*, 26 *N. Y.*, 53.)

It seems to me, under the well-settled rule in such cases, that the administrator had no authority or right to avail himself of the lease in question by procuring its continuance in his name, at the expense of the estate, and that there was a subsisting right for the whole term, and that the statute of frauds has been obviated by the performance on the part of the intestate, and the acquiescence of the lessor; and the more especially is this so, as the lessor made no claim to the premises by reason of the non-signature to the lease, and did not avail himself of the statute.

It is equally clear that the administrator procured the instrument from Wheeler, at the foot of the lease, containing the terms and the privileges of the verbal agreement on his own account, securing the rights of the estate to himself, which he was bound to protect as the representative of the estate.

It is proved undoubtedly that he, as representative of the estate, could not continue the occupancy of the premises, during the term provided by the verbal lease in the name, and for the benefit of the estate; yet it was his duty, as its representative, to convert the interest of the estate in it, into money, and when he assumed to occupy the premises as an individual, he should be charged with the value of the lease at the time when the inventory was made, as much as though it had been sold by him as an asset of the estate.

GREEN *v.* GREEN.

I am, however, not able from the facts presented, to hold that the administrator is chargeable with interest upon the sum so inventoried, from the date of the inventory, for if it had been converted immediately into money, the administrator would not necessarily be chargeable with interest, because the exigencies of the estate might render it necessary that he should hold, or use it.

But as the law prescribes the period of 18 months as the ordinary limit for final settlement of the accounts of the administrator, I am of opinion that interest should be charged from the expiration of the 18 months after letters of administration were issued. Let the auditor's report be modified by charging the administrator with the sum of $1,500, the amount inventoried for the lease, with interest thereon to the date of the decree, from the expiration of the 18 months aforesaid, and in all other respects let the auditor's report he confirmed.

Decree accordingly.