No. 29,432.

THE ANGOLA STATE BANK, and CHARLES W. JOHNSON, Receiver of THE AMERICAN STATE BANK, *Appellants,* v. C. H. FRY et al., *Appellees.*

(287 Pac. 245.)

Opinion filed May 3, 1930.

C. J. Taylor, of Parsons, *Dallas W. Knapp* and *Charles D. Welch,* both of Coffeyville, for the appellants.

*Charles Bucher* and *Barney Bucher,* both of Coffeyville, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This is an appeal from an order setting aside a sheriff's sale of real property made in pursuance of an order of sale, in an action on a promissory note in which the real property had been attached at the beginning of the action. In the district court there were two cases, but since they are alike in all respects they are treated here as one. A homestead question is involved, and specifically whether the property became the homestead of defendants prior to the levy of the attachment. The trial court held that it did, and plaintiffs have appealed.

From the record, including the findings of the court, the facts may be summarized as follows: C. H. Fry and Pearl Fry are husband and wife and the parents of three minor children. In March, 1929, they were living in a rented property in Coffeyville and owned no real estate. They had lived in town about seven years, where Mr. Fry was employed. William J. Neer, the grandfather of Mrs. Fry, owned at the time of his death, January 25, 1929, 160 acres of farm land in Labette county on which there was a residence and other buildings, and which was used together as one farm. By his will he devised this land to Mrs. Fry. Mrs. Fry was born and had been reared on this farm. About February 11 she and her husband first learned that the farm had been devised to Mrs. Fry, and then made up their minds and decided to move to the farm and make it their home. The farm was occupied by a tenant, who was renting by the month, and who had paid his rent to March 9. The Frys went to him and told him they wanted possession of the place and desired to move on it, and, although the tenant would have preferred to remain, he agreed to surrender possession, and did move off the farm on March 9, or within a day or two. Fry and his wife secured possession of the premises on March 10 or 11 and immediately began making repairs on the property, and in a few days, by March 17, moved in and took possession of the same, and have continued to occupy the property as their home. The will was probated February 26. C. H. Fry and Pearl Fry were indebted to the plaintiff banks on two promissory notes. On February 25 the banks brought suit on those notes and caused summonses to be issued, which were served on the defendants February 26. And on that day the plaintiffs caused attachments to be issued and levied upon

the real property in controversy. No notice of this attachment was served on the defendants; service was made on the tenant in possession of the property. There is some controversy in the evidence as to the date when Mr. and Mrs. Fry went to the tenant and told him they wanted possession. Their evidence fixes the time before the will was probated. Other evidence tends to show that it was after the first of March. The court found that it was before the defendants knew of the attachment proceedings. There is also evidence tending to show that defendants, about March 3, had stated to the executor of the will, in substance, that they did not care to move on the property and would like to have the tenant remain, but this was denied by defendants, and the court found against plaintiffs' contention on that point. In the suits brought by the banks, judgment was rendered in favor of the plaintiffs May 13, 1929, and on June 4 the order of sale was issued. Plaintiffs argue that in order to constitute a homestead the property must be occupied as a residence. This may be conceded, for our constitution (art. 15, § 9) so requires. Plaintiffs further argue that when an attachment or judgment lien exists on real property the subsequent occupation of the property by the debtor as his home will not defeat such lien, and this general proposition may be conceded. (*Bullene v. Hiatt*, 12 Kan. 98; *Robinson v. Wilson*, 15 Kan. 595; *Ashton v. Ingle*, 20 Kan. 670, and allied cases, including *Caple v. Warburton*, 125 Kan. 290, 264 Pac. 47.) But the rule announced and applied in those cases is not applicable here. When one purchases a property with the intention of occupying it and making it his homestead, and takes steps to do so, and does do so as promptly as the circumstances of the case will permit, a judgment or attachment lien does not attach thereto so as to take precedence over the homestead right.

In *Edwards v. Fry*, 9 Kan. 417, 425, it was said:

"A purchase of a homestead, with a view to occupancy, followed by occupancy within a reasonable time, may secure *ab initio* a homestead inviolability."

In *Monroe v. May, Weil & Co.*, 9 Kan. 466, it was held:

"A purchase of a homestead, with a view to occupancy, followed by occupancy within a reasonable time, receives from the time of purchase a homestead exemption from seizure upon execution or attachment."

In *Gilworth v. Cody*, 21 Kan. 702, the defendant Cody, on De-

cember 1, 1877, purchased eighty acres of land with the purpose and intent of using it as his homestead. The land was vacant. Cody commenced at once to dig a cellar and haul stone for a dwelling house. On December 5 he went to a town to purchase materials, and returned on December 7 and unloaded them on property adjoining his. On the same day the property was levied upon under an attachment. Cody continued the construction of the dwelling house and completed it December 28 and moved into it with his family. Held, that the premises were exempt as a homestead from seizure when the attachment was levied.

In *Upton v. Coxen,* 60 Kan. 1, 55 Pac. 284, a judgment was rendered in Shawnee county in 1892, and on May 10, 1893, a transcript of it was filed in Wabaunsee county. A levy was made on the land in August, 1893. The owner had inherited a one-fourth interest in the land from her father and purchased one-half interest from other heirs. On May 9, 1893, she and her husband purchased lumber and building material and took the same on the land and began the erection of a house, which was later completed and occupied until they gained possession of the house, then occupied by a tenant on the farm. The tenant's right to possession did not terminate until the late fall of 1893. The court noticed that the parties had acquired the property with the intention of using the same as a homestead. They moved there in good faith actually one day before the judgment became a lien, but the court said:

"There can be no question, however, about the time, as the land was acquired some time before the actual occupancy of the same, and it is settled that the purchase of a home, with the intention to occupy it as a homestead, followed by actual occupancy within a reasonable time, may impress it *ab initio* with homestead character and inviolability." (p. 3.)

In *Stowell v. Kerr,* 72 Kan. 330, 83 Pac. 827, it was held that where land is purchased with the definite intention of making it a homestead, and immediately thereafter the purchaser and his family go into possession and continue to occupy it as their homestead, a judgment subsisting against him at the time of the purchase will not became a lien thereon. It seems an abstract of judgment was filed in district court December 6, 1900. Kerr induced a relative to purchase for him forty acres for his home in April, 1903, and an adjoining forty in February, 1904. It was immediately occupied by the Kerrs as their home, the title being in the relative who furnished the money. It was held that Kerr had an equitable interest

in the land sufficient to establish a homestead thereon, and it was said:

"As the land was purchased with the definite intention of making it a homestead, it had the homestead character from the beginning. The law does not prohibit a judgment debtor from procuring a homestead which will be exempt from forced sale for debts, nor is there anything in its purpose warranting the view that in the purchase of a homestead a judgment lien will outrun a homestead interest. On the other hand, the homestead law is given a practical and liberal interpretation in keeping with its policy and purpose. While occupancy is an essential feature of a homestead right, it is well known that complete occupancy at the moment of purchase is frequently impracticable." (Quoting from earlier cases.) (p. 331.)

In *Randolph v. Wilhite*, 78 Kan. 355, 96 Pac. 492, the owner of city property occupied as a home purchased a tract of land in the country with the intention of making it his home, but it could not be occupied until improvements were made thereon. Before purchase, but with a view of it, he agreed to convey the city lots to one who was to pay for them by making the improvements on the farm. This agreement, although oral, was executed on both sides without delay, and as soon as the farm tract was ready for occupancy the owner moved upon it and made it his homestead. The farm was deeded June 1, the city lots June 20, and the removal was made July 6 of the same year. Held, that the actual occupancy of the farm related back to the time the land was purchased with the intention of making it a homestead, and the purchaser took title free from liens of judgment against it. The case collects many of the early authorities.

In *Machine Co. v. Roach*, 91 Kan. 840, 139 Pac. 430, the property was left the defendant by will, September 30. An execution was levied upon the property in December. Defendants had formerly lived upon the property, which was that of the mother of defendant's wife, and were there taking care of her at the time of her death, and continued to stay there until October 10, when they went back to a farm they had rented, where work was to be done, leaving some of their household effects on the premises inherited, intending, after the work was finished on the farm, to come back to the property and make it their home. There was testimony that defendants had rented the house, except one room, and had attempted to arrange for a removal to Texas, but if that had been planned it had not been accomplished. The trial court held that the

property was exempt from levy as the homestead.˙ This court declined to reverse the trial court.

The trial court took the view that the facts disclosed by the evidence brought the case within the rule of the above cases from which quotations are made. We agree with that conclusion. Here Mrs. Fry, whose home had been on the land in question most of her life, and her husband, on learning that the property had been devised to her, determined to move upon the land and make it their home, and took the necessary steps and did so as soon as that was possible. There is evidence from which the court might have found that this was not their first intention, but that evidence was controverted, and the finding of the trial court on that matter is binding here.

Appellants complain that the court did not permit them to open up the hearing and introduce evidence of other witnesses. That is a matter largely in the discretion of the trial court. A statement was made on the day of the hearing of the testimony these witnesses would give, and other witnesses were present who gave substantially the same testimony, hence the testimony of these witnesses, if the case had been opened up, would have been merely cumulative. The court, having before it evidence of the same character, and having heard the evidence in conflict with it, was in good position to know whether it would influence its judgment. There is no ground for holding an abuse of discretion in this respect.

The judgment of the court below is affirmed.