No. 31,481

James G. Hammond, as Receiver of The Minneapolis National Bank, *Appellant*, v. A. B. Neely, *Appellee*.

(28 P. 2d 726.)

Opinion filed January 27, 1934.

*L. A. McNalley,* of Minneapolis, for the appellant.

*F. D. Boyce,* of Minneapolis, for the appellee.

The opinion of the court was delivered by

Johnston, C. J.: This case involves the right to a homestead in a farm home on which an execution was levied for the enforcement of a judgment rendered against the claimant. The claim of homestead right was sustained, and plaintiff appeals.

A judgment against A. B. Neely was rendered in favor of James G. Hammond, as receiver, on March 21, 1931. An execution was issued on March 31, 1931, which was levied on the farm on April 29, 1931. Upon due advertisement by the sheriff, the land was sold on June 2, 1931. Before the sale Neely notified the sheriff that he claimed the land as his homestead and later filed a motion in court objecting to a confirmation of the sale on the ground that the land was the homestead of Neely and his family.

On a hearing the lower court found that the land was a homestead, and set aside the sale made by the sheriff. Evidence was offered tending to show that the land was formerly owned by Thomas Neely, the father of defendant, and that in 1898 Thomas Neely died seized of the land, and that by will he had given the land to his two sons, one of whom was the defendant, subject to a life estate in his wife, the mother of the sons. When the will was made she signed the will with a written election to take under its

terms, and subsequently, when the will was probated, she filed a written election to take under the will and renounce her rights under the law. Immediately thereafter the defendant commenced to improve the land so devised, built a home, and also improved it by building barns and granaries, windmills and other like improvements, and his mother living with him knew that he was making these improvements and claiming to own the fee title, subject to her life estate. Subsequently he acquired his brother's interest in the farm.

Prior to 1919 the mother purchased a home in Minneapolis, which is about six miles from the farm home, furnished it and lived there until her death in November, 1930. The defendant had lived with his mother on the farm prior to her removal to Minneapolis, was a single man, and cared for his aged mother. Later he was married and two children were born to him, and they attended school in Minneapolis because of the better facilities there. The defendant's family continued to live in the mother's house until the close of the school year, but managed and worked the farm in the meantime. Two or three times during the week his wife would go out on the farm and assist with the work, and after school closed in the spring and until the vacation ended the family lived on the farm.

There was testimony, too, that the defendant had exercised the rights of a citizen in Minneapolis, the assessors had assessed his personal property there, and noted him to be a resident of the city, but it also appears that he voted in the township where the farm was located in August, 1930, at a primary, and also voted there at the general election the same year. It appears that the defendant took his family to the farm about June 1, 1931, which the court held was as soon as reasonable after the death of the mother, and that he had ever since resided on the farm with his family. That after the death of the mother the defendant had established himself on the farm as his home, and that within a reasonable time he had completed actual occupancy which impressed it with the homestead character from the beginning, and that the farm was his homestead before the judgment was rendered or the levy of the execution made.

It has been determined that one holding an interest in land subject to a life estate cannot support a homestead exemption on his estate in remainder during the life of the life tenant. (*Caple v. Warburton,* 125 Kan. 290, 264 Pac. 47.) Defendant, although he made vast im-

provements and treated the place as his own, did not acquire such an interest as will carry the homestead privilege. He had, of course, the time from the death of his mother, November 26, 1930, to the time judgment was rendered, on March 20, 1931, to declare his purpose in such a way as to make it his homestead. It has been determined that defendant had the intention at all times to establish his home on the farm on the death of his mother. At the primary election in 1930, as we have seen, he voted at the farm polls in Garfield township, and at the general election the same year he voted at the polls near the farm. There was the sending of the children to school in Minneapolis, because of superior facilities over the country school in Garfield township, and some other steps were taken in local matters which were similar to things done by residents of the city, but the trial court found, on the whole, that the farm was defendant's homestead when the judgment was rendered and the levy made thereunder on the farm. While occupancy of the estate by the family is essential to a homestead, it is not necessary that all members of the family should be residing there at the time that the owner determines to claim it as his homestead. In the early case of *Edwards v. Fry*, 9 Kan. 417, where the subject was under consideration, it was said:

"We know that the purchase of a homestead, and the removal onto it, cannot be made momentarily cotemporaneous. It takes time for a party in possession to move out, and then more time for the purchaser to move in. Repairs may have to be made, or buildings partially or wholly erected. Now, the law does not wait till all this has been done, and the purchaser actually settled in his new home, before attaching to it the inviolability of a homestead. A purchase of a homestead with a view to occupancy, followed by occupancy within a reasonable time, may secure *ab initio* a homestead inviolability." (p. 425.)

In a later case, where the subject was under consideration, it was said:

"A purchase of a homestead with a view to occupancy, followed by occupancy within a reasonable time, receives from the time of purchase a homestead exemption from seizure upon execution or attachment." (*Monroe v. May, Weil & Co.*, 9 Kan. 466, syl. ¶ 3.)

In *Bush v. Adams*, 72 Kan. 556, 557, 84 Pac. 122, it was held that the property was not exempt as a homestead from sale on an execution, but in deciding the case the court remarked that—

"In order that property may be exempt on the ground of its homestead character it must be 'occupied as a residence by the family of the owner.'

(Const. art. 15, sec. 9; Gen. Stat. 1901, sec. 3016.) In Kansas, and in other states having similar constitutional and statutory provisions, it is held that such occupancy need not always be actual or physical. The courts deal liberally with claims of homestead exemption asserted in good faith, but cannot extend the right beyond the language of the law defining it." (See, also, *Angola State Bank v. Fry,* 130 Kan. 641, 287 Pac. 245, and cases cited therein.)

When defendant's mother died the title to the farm was clearly in him, and if he then had a well-defined intention to occupy it as a homestead, and by overt acts manifested that to be his purpose before the judgment was rendered, his homestead right cannot well be questioned. He was on the farm as his home at the time of his mother's death, and his right thus acquired ripened at once into a homestead by his well-defined purpose and his overt acts indicating it. When his mother went to Minneapolis to live, defendant went with her—that is, he "Came in in the evening and stayed with her. My wife stayed with her in the daytime. Her health was very poor, and she requested that we do that, and I was the only one that was left in the family and I felt that it was my duty to do that. . . The going back and forth to the farm was quite a sacrifice, but felt that it was my duty to do it." He had a hired man, regarded the farm as his home, and had no intention of residing elsewhere. The hired man, who said he was with him the most of the time for the last three years, also said that Neely carried on the home, that he had horses, cows, sheep, pigs, chickens, dogs and cats on the place. That Neely was there practically all the time, that Mrs. Neely came out two or three times a week, and the whole family came out once in a while.

When the sheriff came to levy on the property the defendant still insisted on his claim of a homestead, notified the sheriff of his claim and that the property was exempt from levy. A few days later he notified the sheriff in writing that the farm levied on was his homestead, and that it could not be sold. This was done in accordance with R. S. 60-3502, which provides for the selection of what he regards as his homestead.

In the recent case of *Farmers State Bank v. Weeks,* 138 Kan. 376, 26 P. 2d 262, the children were attending school in Topeka, and the owner claiming the homestead in another county was with the children most of the time. Part of the time the children were at the homestead, and in that case it was said:

"Under the evidence we think that her action and statements and claims were made in good faith, and sufficient to establish a residence and home upon

which to base the claim of a homestead right. The intent of the claimant enters largely into the creation and acquiring of a homestead. It is true, as ·appellant contends, that a mere representation of a purpose to occupy is not enough to establish a homestead right. There must be a *bona fide* intent and actual occupancy. Representations may be proven to show intent, likewise the physical acts of the claimant in the matter of occupancy may be shown, to prove that the acts concur with the declared intent. The reservation of a part of the residence and equipment of the same as a home, followed by actual occupancy when not in Topeka with the children, tends to show good faith in establishing a homestead. When land is once impressed with the homestead character, the right is not lost by a temporary absence therefrom." (p. 378.)

We think the trial court had sufficient evidence tending to show that the defendant had made the farm his homestead before the judgment against him was entered, although the children continued in school to the end of the term, and that all of the family have lived with him on the farm ever since that time.

The judgment of the trial court was that the farm had become the homestead of defendant before the judgment against the defendant was entered, and therefore its judgment in this case in favor of the defendant is affirmed.

HUTCHISON, J., not sitting.