## ATCHISON SAVINGS BANK, *et al.*, v. WHEELER'S ADMINISTRATOR.

HOMESTEAD; *Abandonment; Acquiring New Home, and New Homestead.* Where one W. owning and residing on a farm of one hundred and sixty acres in Atchison county, in February 1872 purchased a house and two lots, two and one-half miles distant, in the city of Doniphan, in Doniphan county, and rented his farm for two years, reserving forty acres in fall wheat, for one year, and the privilege of one room in the farm house, in which to store some articles of furniture, and soon afterward left his farm and removed with his family to his place in Doniphan, and resided there till his death in January 1874, and while living in Doniphan added, by purchase, to his city property, nine other lots, improved this property, taught school in the city, held the office of street commissioner under the ordinances of the city, and voted at the local city election in 1873, *held,* that he gained a new home, and acquired a new homestead in Doniphan, notwithstanding that at the time he moved to the latter city it was his intention to rent his farm two, three, or four years, sell off his old farm machinery, school his children, then buy new machinery and return to his farm. As the newly-acquired home was upon premises owned by him, to which the homestead exemption attached by reason of its occupancy as a residence, and as he exercised all the privileges appertaining to his residence in Doniphan, including voting and holding office, it must be held that he had abandoned his farm as his homestead, and at his death it was not exempt from the payment of his debts.

*Error from Doniphan District Court.*

In January 1874, Abijah Wheeler died intestate, at the city of Doniphan, in Doniphan county, leaving a widow and children. He owned a farm in Atchison county, and several lots in the city of Doniphan. I. N. Smallwood was appointed administrator of Wheeler's estate, by the probate court of Doniphan county, and served as such until October 1875, when he was removed, and John F. Wilson was appointed in his place. Wilson resigned in April 1876, whereupon *H. H. Wheeler*, a son of said intestate, was appointed administrator, and has since been acting as such. On the 23d of April 1877, *Wheeler*, claiming that said estate had been fully administered, filed his final account as administrator, applied to the probate court for final settlement, and for his discharge as administrator — and such settlement and discharge were ordered and entered the same day. At this time there were of record in said probate court several judgments which had been rendered against the estate of said Abijah Wheeler, and which remained wholly unpaid. One of such judgments was in favor of the *Atchison Savings Bank*, for $891.06, and interest from 1st April 1874, and another was in favor of *A. C. Lowe*, for $243.84, and interest from 20th February 1874. In June 1877, the *Atchison Savings Bank*, and *Lowe*, claiming that no notice whatever had been given to them of such settlement and proceedings for the final discharge of the administrator, and that they had no knowledge or information of any application by said administrator for final settlement until several days subsequent to the date of such settlement, and that as judgment-creditors thereof they were adversely interested to such settlement of the administrator's accounts, and proceedings thereon, made application to the probate court to have said account and proceedings and final settlement opened, and that further hearing thereon be had. The probate court ordered the settlement opened, and set aside the order discharging the administrator, and ordered that further hearing be had on the 23d of July

1877. Such hearing was had at that date, and the probate court found that the estate had not been fully administered, and that there were assets in the hands of the administrator subject to the payment of the claims above mentioned, and ordered that the administrator proceed to final administration. From this order and decision of the probate court, the administrator appealed to the district court. The appeal was duly docketed in the district court, and was heard and decided at the September Term 1877, A. F. M., judge *pro tem.*, presiding. The court, holding that the supposed assets were exempt, as being a homestead, found in favor of the administrator, and gave judgment that the estate of Abijah Wheeler had been fully administered, and ordered that *H. H. Wheeler* be discharged as administrator thereof. The *Savings Bank*, and *Lowe*, appeal, and bring the case here on error.

*W. W. Guthrie,* for plaintiffs in error.

*W. D. Webb,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: The question of importance in this case is, were the premises described in the application filed on 1st June 1877 in the probate court of Doniphan county by the plaintiffs in error, to open the settlement of the estate of Abijah Wheeler, deceased, and have further administration, exempt as a homestead? If this land was assets in the hands of the administrator, the estate had not been fully administered, and the plaintiffs in error have the right to complain of the decision and judgment of the district court. If the land was the homestead of said Wheeler, at his death, and has continued the homestead of the family during such administration, the same was not assets liable for the debts of the intestate, and said application was properly denied.

From the conclusion of facts found by the court, we ascertain that said Abijah Wheeler, with his wife and four children, moved on the premises situate in Atchison county, in the spring of 1861; that he then owned the same; that it did not exceed 160 acres; that it was farming

Statement of facts.

land, and not within the limits of an incorporated town or city; that he occupied the premises as a residence until the 1st of March 1872; that in February 1872, he had some talk with another person about trading a stock of goods owned by a party, then in Pennsylvania, for his farm, but no trade was made, as Wheeler gave up the idea, before the owner of the goods reached Kansas. On the 17th of February 1872, Wheeler purchased a house and two lots in the city of Doniphan, a city of the third class, in Doniphan county, paying therefor $600, and putting in as part payment a pair of his mules, used formerly on the farm, at $250. On the same day he rented the farm to one Crawford for two years from the 1st of March 1872, reserving forty acres, then in fall wheat, for the first year, and the privilege of one room in the house. He was to receive cash rent, pay the taxes, and keep up the fences. The fall wheat having frozen out, and his tenant not needing the ground, Wheeler put that ground in spring crops for that year, and reserved the orchard, which was fenced off by itself. Wheeler and his family moved to their new home in Doniphan city, two and one-half miles from the farm, on the 1st of March 1872, taking all their effects and furniture, except some pictures and articles not necessary for use, viz., chairs, a stand, a table, and a stove, which were left in the reserved room in the house on the farm. Between February 17th and March 1st, 1872, Wheeler advertised a public sale of all his farm-stock and effects, except a pair of horses, two cows, and some pigs, which he intended to take and did take to the city of Doniphan with him. At the sale, everything but his interest in a threshing-machine was offered. Some of the farming implements received so low bids, they were not sold, but stored on the premises. He had considerable farm stock, the most of which was sold at the sale. After removing to the house at Doniphan, which was one room smaller than the farm house, he continued to occupy it with his family, until his death on the 14th of January 1874. He died in this house, and was buried in the Doniphan town cemetery. In the winter of 1872 and 1873, he taught school in Doni-

phan. The next spring he was appointed street commissioner in Doniphan, and acted as such for one year. He also voted in Doniphan at the city election in April 1873, and in the same year put up a city jail under a contract with the city. In 1873 he bought nine other lots adjoining the Doniphan house, and fenced them in; dug a well on the premises; set out fruit trees, and his wife brought some shrubbery from the farm and put out in the yard. He removed and rebuilt the stable on his city lots, which he used for his horses and cows. When he went to the farm to work he carried his dinner, and returned to his Doniphan place to sleep. Sometimes his wife went to the farm visiting, on which occasions she ate at Crawford's table, and once or twice stayed there over night, and slept in a bed belonging to the tenant. At the time Wheeler moved to the city of Doniphan, it was his intention to rent his farm for two, three, or four years; sell off his old farm machinery; school his children; then purchase new machinery, and return to the farm again. During the winter of 1873–4, he tried to rent his farm for another year from the 1st of March 1874, (the time Crawford's lease expired,) but failing to do so for cash rent, he determined to move back to the farm, with his family on said 1st of March, and notified his tenant to this effect. From the testimony of his wife and sons, it appeared that shortly before the death of Wheeler he had stated his intention to remove to the farm after the expiration of Crawford's lease, but had taken no steps except he had everything in readiness, and had some teams and farm implements engaged.

After Wheeler's death, his family continued to reside on the Doniphan place until July, or August, 1875, and then the widow and children moved on the farm to claim it as a homestead. The farm at that time was occupied by a tenant under lease from the administrator of the estate of the intestate, to expire the following March. The widow made arrangements with the tenant by which she was allowed to

occupy a part of the house during the balance of his lease, but obtained thereunder no occupation of the land.

Upon these facts, the court below erred in holding the premises in controversy a homestead, and exempt from the payment of the debts of the intestate. The authorities all concur in holding that when by the unequivocal abandon-

1. Abandonment of homestead.

ment of the homestead the former occupant has evinced his intention of no longer treating it as his place of residence, his right of exemption is lost. Now, the conflict in the authorities upon this point is principally, what is sufficient evidence of such abandonment. Generally, it is conceded, that where the owner of the place has not only removed, but has established a new home elsewhere, the proof of the abandonment is conclusive. This is on the theory, that a man or the head of a family can have but one home-stead at the same time. So, "where the owner of a house and lot voluntarily removes from it, and takes up another residence in the same town, with a view to the more convenient transaction of business, it can no longer be said to be his homestead. His residence, his home, would be at his new abode."

In *Jarvais v. Moe*, 38 Wis. 440, plaintiff removed from his former home, rented it to other persons, and moved with his family into another building owned by him in the same city, for the purpose of keeping a hotel in such building. He claimed that he did this for the purpose of establishing the hotel and keeping it until he could rent it or sell it, and of then returning to his former home. He remained in the hotel eighteen months, and left it only when it became obvious that he could not maintain his title to it against incumbrances upon it. Under these circumstances it was held that he must be regarded as having acquired a new residence on his hotel property, and as having abandoned his former home-stead. In *Cabeen v. Mulligan*, 37 Ill. 230, the husband removed to another state with his family, and remained there two years before he returned, and the court said that such re-

moval was evidence of an abandonment, without reference to what he said before or after his return. In *Titman v. Moore*, 43 Ill. 169, a person left his farm and removed to a town six miles distant, where he voted at two local elections, first renting his farm for three years, and at the end of one year terminating that agreement and renting it anew for five years; and after eighteen months' absence from his farm, executed a mortgage which did not release the benefit of the homestead act. It was held that the mortgagee took his lien free from the operation of the homestead act, and that the right to the homestead was not restored by a subsequent return to and residence on the farm. In a recent case in Alabama, of *Boyle v. Thuleman*, it was held, if the owner of a homestead leases for a term, transferring occupation and right of possession, disabling himself from resuming them at pleasure during the term, and acquires a home elsewhere, the exemption ceases. *The Reporter*, vol. 6, page 391.

In the case we are now considering, Wheeler gained a new home in Doniphan city; he owned the premises; he lived there with his family; he taught school there; he held the office of street commissioner under the city ordinances, and voted at the city elections of 1873; he increased and improved his possessions in the city; he and his wife ornamented and beautified their lots, and in every possible form impressed the character of a homestead on the Doniphan property. During the residence and occupation of the city premises, he clearly acquired the right to have claimed them as a homestead, as in fact it was; and who can doubt, from the findings of fact, that his widow would have done so had it been for her interest? It is insisted however, that as the intestate had an intention to return, the homestead rights to the farm were preserved. The unexecuted intention to resume possession of the farm, made a few days prior to his death, upon the failure to lease for cash rent, would not have the effect to restore his right to hold the farm exempt. Such intention might have never been carried out. The intention to return, expressed before

*[margin note: 2. Acquiring new home, and new homestead.]*

and at the time the removal occurred, is entitled to weight; and but for the ownership of a new homestead in another county, and the exercise of his political rights as an inhabitant and citizen of Doniphan, we might well infer his absence from his farm a temporary one, and not amounting to an abandonment. But the making and gaining of a new home, the acquiring of a new homestead, and all the rights appertaining to it, together with the exercise of those rights to the fullest extent, outweigh the claim for exemption on the ground of an intention to return to the farm in two, three, or four years. We are not unmindful of the beneficent character of our constitutional and statutory provisions regarding homesteads, nor of our duty to construe them liberally in favor of their object; and this court has strongly demonstrated such a disposition in *Monroe v. May*, 9 Kas. 466, in *McDowell v. Diefendorff*, unreported, and in *Hixon v. George*, 18 Kas. 253; but to go further, and assert that a man, or the head of a family, can be the owner of two separate and distinct homesteads at the same time, or that one person may own and occupy one place for a residence "where he surrounds himself with the ordinary insignia of a home, and where he may enjoy its immunities and privacy," and at the same time claim as a homestead another place by virtue of its occupation by a tenant and an intention to return to it as a residence in the future, would be extending the object of our homestead exemptions to pernicious results, unwarranted by our laws, and unsupported by reason or authority. The fact that the widow and children moved back to the farm in the summer of 1875, more than eighteen months after the death of the intestate, in no way aids the case of the defendant in error. The farm was not the homestead of the husband at his decease. The family then actually occupied as their residence and home the Doniphan property. Sec. 2 of the chapter on Descents and Distributions, (Gen. Stat. 392,) provides that the homestead is only exempt from the payment of the debts of the intestate when occupied by such intestate and his family at the time of his death, as a residence, and continued

to be so occupied by his widow and children after his death. The Doniphan place was exempt within this section; the farm was not exempt. Therefore, under all the circumstances, the claim that such farm was the homestead of the family of the deceased must be denied.

The judgment of the district court will be reversed, and that court directed to render judgment that the land described in the application of the plaintiffs in error, is assets of the estate of Abijah Wheeler, deceased, subject to the payment of the debts of the estate.

All the Justices concurring.