THE EMPORIA MUTUAL LOAN AND SAVINGS ASSOCIA-
TION v. JOHN S. WATSON.

FACTS STATED; *Homestead Right, Protected—Reply—Sustaining Demur-
rer, Error.* Action by plaintiff to foreclose a mortgage against Cupp
and wife, in which Watson is made a defendant and claims title to
the mortgaged land under a sheriff's deed; and the facts show that
the judgment under which Watson claims was obtained in the dis-
trict court of the county in which the land is situated, on October
26, 1886, and the 1st day of the October, 1886, term of said court was
October 4, 1886. And the facts further show that Cupp and wife
purchased the land in controversy October 14, 1886, for a homestead,
*intending at the time to occupy it as such immediately*, and that
they took possession of it as a homestead on the day of purchase,
and have occupied it as a homestead ever since to the commence-
ment of this suit: *Held*, That the judgment under which Watson
claims never attached to the land; that under the facts, the home-
stead right in the land was protected as against the judgment cred-
itor and those who claim under him. And *further held*, that the reply
in this case stated a cause of defense to Watson's claim to the land
as set out in his answer, and the demurrer thereto ought to have been
overruled.

*Error from Lyon District Court.*

ACTION to foreclose a mortgage. Judgment for the plain-
tiff *Loan Association*, at the September term, 1888, for the
amount of its mortgage; but judgment for the defendant *Wat-
son*, quieting his title to the land mortgaged. The plaintiff
brings the case here. The material facts are stated in the
opinion.

*Cunningham & McCarty*, for plaintiff in error.

*J. Jay Buck*, for defendant in error.

Opinion by STRANG, C.: Action to foreclose a mortgage
against John Cupp and Mary Cupp, his wife, begun in the
district court of Lyon county July 21, 1889. John S. Watson
was made a party defendant, because he claimed some interest
in the land described in the mortgage. Cupp and wife de-
faulted. Watson answered, and claimed title to the land un-

der a sheriff's deed.   Plaintiff replied that the land sought
to be foreclosed was the homestead of Cupp and wife; that
they purchased it on the 14th day of October, 1886, as and
for a homestead, and went into occupation thereof on that day,
and continuously occupied it as a homestead from that time
to the commencement of this suit; the defendant Watson
demurred to the reply, and alleged that the reply stated no
defense to his cause of action.   The demurrer was sustained.
The plaintiff elected to stand on its pleading, and judgment
was rendered for the plaintiff against the Cupps for the amount
of its mortgage, and in favor of the defendant Watson against
all the other parties to the suit, quieting the title of said Wat-
son to the lot in question.   To this decision the plaintiff ex-
cepted, and comes here with its case-made, asking a reversal
of the judgment of the district court.

October 14, 1886, Cupp and wife exchanged 80 acres of
land with the defendant Watson for lot 29 in Coppley's ad-
dition to the city of Emporia.   The deeds were exchanged
by Cupp and wife and Watson and wife on that day, and
Cupp and wife on that day went into possession of lot 29,
and have ever since continuously occupied it as a homestead.
The judgment under which Watson acquired title to said lot
was rendered in Lyon county district court, October 26, 1886.
The first day of said October term, 1886, was October 4th.
The mortgage of the plaintiff company was recorded January
28, 1887.   Now if the judgment under which the defendant
Watson derives title ever became a lien upon lot 29, it was a
lien thereon before the mortgage of the plaintiff company
attached thereto, and the sale under such judgment gave good
title; but if said judgment never became a lien upon said
lot, the sale of said lot thereunder conveyed no title.   It is
admitted under the pleadings that Cupp and wife were on
October 14, 1886, occupying lot 29 as a homestead, and have
continued to occupy it as a homestead ever since.   It follows,
then, that if said judgment ever became a lien upon said lot,
it must have attached thereto on or before the 14th day of
October, 1886; but the judgment was not rendered until

October 26, 1886. It could not become a lien upon anything before it was rendered, and when rendered by relation back it became a lien upon all the real estate owned by Cupp in Lyon county, not exempt, on the first day of the term at which it was rendered, to wit, October 4, 1886. It did not become a lien by relation back on lot 29 on the first day of the term, or October 4, 1886, because Cupp did not own the lot until the 14th of October, 1886; so if it became a lien upon said lot at all, it became such on October 14, 1886. But, as stated above, Cupp, immediately upon the receipt of his deed for the lot, went into possession thereof as a homestead. If, therefore, the judgment in question became a lien upon said lot, the lien must have attached during the brief space of time between the receipt of the deed by Cupp and the occupancy of the lot by himself and family as a homestead. The reply states that at the time Cupp and wife traded for this lot they did so intending to make it their homestead and to occupy it as such immediately. It is well settled in this state and other states, that where a person, the head of a family, purchases a piece of land, intending to make it a homestead for himself and family and to occupy it as such at once, and follows such intention up by immediate occupancy of the premises as a homestead, such land is all the while protected by the exemption provision from judgment liens.

In *Edwards v. Fry*, 9 Kas. 291, Mr. Justice BREWER used the following language:

"We know that a purchase of a homestead, and the removal on to it, cannot be made momentarily contemporaneous. It takes time for the party in possession to move out, and then more time for the purchaser to move in. Repairs may have to be made, or buildings partially or wholly erected. Now the law does not wait till all this has been done, and the purchaser actually settled in his new home, before attaching to it the inviolability of a homestead. A purchase of a homestead with the view to occupancy, followed by occupancy within a reasonable time, may secure, *ab initio*, a homestead inviolability."

Also in *Monroe v. May*, 9 Kas. 466, the same Justice says:

"The homestead is something towards which the eye of the creditor need never be turned."

In *Swenson v. Kiehl*, 21 Kas. 534, Mr. Justice BREWER, upon this subject, again says:

"We do not mean that a party occupying a residence under a lease, must of necessity wait until the exact instant of the termination of that lease before making arrangements for his future home. The law favors homesteads; and arrangements at about the time of the termination of such lease or occupation, and with a view thereto, are for the purposes of a homestead question, considered as made contemporaneous with such termination."

In *Riggs v. Sterling*, 27 N. W. Rep. 705, the court says:

"And purchase with intention to use as a residence, followed by actual residence as soon as practicable, will give the premises the character of a homestead from the time of purchase."

See *Gilworth v. Cody*, 21 Kas. 702; *Mitchell v. Milhoan*, 11 id. 617; *Colby v. Crocker*, 17 id. 527; *Reske v. Reske*, 51 Mich. 541; *Scofield v. Hopkins*, 61 Wis. 374; *Hanlon v. Pollard*, 17 Neb. 368; *Crawford v. Richeson*, 101 Ill. 351; *Harrison v. Andrews*, 18 Kas. 535.

It is claimed by counsel for defendant, that as the 80-acre tract of land which Cupp and wife gave in exchange for lot 29 was not a homestead, lot 29 was not purchased with homestead funds, and was therefore not exempt as a homestead. This position is not tenable.

We recommend that the judgment of the district court be reversed, and the case sent back for further proceedings.

By the Court: It is so ordered.

All the Justices concurring.