W. A. RANDOLPH *et al.* V. LYDIA A. WILHITE.

No. 15,595.   ( 96 Pac. 492.)

SYLLABUS BY THE COURT.

HOMESTEADS—*Occupancy.* The owner of city lots occupied as a homestead purchased a tract of land in the country with the present intention of making it his homestead. He could not occupy it until certain improvements were made. Before the purchase, but in view of it, he agreed to convey the city lots to one who was to pay for them by making the necessary improvements on the country tract. This agreement, although oral, was executed on both sides without delay, and as soon as the country tract was ready for occupancy the owner left the city lots, moved upon it, and made it his homestead. The country tract was deeded on June 1, the city lots on June 20, and the removal was made on July 6, all of the same year. *Held:* (1) The actual occupancy of the country tract related

back to the time the land was purchased with the intention of making it a homestead, and the purchaser took title free from the lien of judgments against him. (2) The homestead character of the city lots ended when for purposes of the law the occupancy of the country place is treated as having begun. (3) The conveyance of the city lots related back to the date of the oral agreement upon which it was founded.

Error from Lyon district court; FREDERICK A. MECKEL, judge. Opinion filed June 6, 1908. Affirmed.

W. A. Randolph, for plaintiffs in error.

L. B. Kellogg, and W. L. Huggins, for defendant in error.

The opinion of the court was delivered by

BURCH, J.: Defendant W. A. Randolph obtained a judgment against J. H. Wilhite. Afterward Wilhite purchased a tract of land which he proceeded to make his homestead, and which he later conveyed to his wife, the plaintiff. Randolph caused an execution to issue upon his judgment, and the plaintiff brought a suit to enjoin the sheriff from levying it upon her land. The parties agreed upon the following facts:

"(1) On the first day of August, 1887, the said defendant W. A. Randolph procured a judgment in this court in an action therein pending against one J. H. Wilhite, in the sum of $820 and costs.

"(2) Afterward, on the 10th day of January, 1890, a payment of $400 was made by said J. H. Wilhite upon said judgment. No other payments have been made upon said judgment.

"(3) Said Wilhite died December 16, 1904.

"(4) Said judgment has been kept alive by said defendant W. A. Randolph having had executions thereon, and the same never became dormant until the said death of said Wilhite, and said Randolph is now, and always has been, the owner of said judgment.

"(5) After the death of said Wilhite said judgment was duly revived against the plaintiff herein, who is the executrix of said Wilhite.

"(6) On August 1, 1887, and for a long time prior thereto, and ever since said date until his death, said

Wilhite was a resident of Lyon county, Kansas, and was also the head of a family, consisting of himself, his wife (the plaintiff herein) and their minor children, living together in said county and state.

"(7) On March 26, 1892, said Wilhite acquired by purchase from one L. C. Martin residence property in the city of Emporia, in said county and state, to wit, lots 120, 12?. and the south half of lot 124, on Mechanic street, in said city, and said Wilhite immediately occupied the same with his family as his home and homestead.

"(8) Said residence property was taken by said Wilhite subject to a mortgage of $2350, and his equity in the same was in the transaction reckoned to be $475.

"(9) Shortly prior to June 1, 1893, said Wilhite received a pension from the government in the sum of $1040, which he concluded to invest, or so much thereof as might be necessary, in procuring a home for himself and family which should be free from incumbrance.

"(10) On June 1, 1893, said Wilhite purchased of Alson Fowler the land described in plaintiff's petition, paying therefor $900 in cash out of his said pension money, which said land is farm land and not within the corporate limits of any city, and was purchased by said Wilhite with the intention of making the same his homestead for himself and family, which intention he never gave up or abandoned, but carried the same into effect by moving upon said land and making the same his home and homestead of himself and family on July 6, 1893, which was as soon as the necessary repairs could be made to the dwelling-house thereon and the barn built on said property; and said Wilhite continued to use and occupy said land as his homestead, and that of his family, until his death, December 16, 1904.

"(11) At the time of the purchase of said premises described in said plaintiff's petition by said J. H. Wilhite, there was no barn thereon, and the residence-house situated thereon was unfinished.

"(12) That one E. F. Sprague, a contractor and builder, of Emporia, Kan., erected the barn on said premises and completed the house, and did some other repairs upon said premises, and in payment therefor said J. H. Wilhite, on June 20, 1893, conveyed said lots hereinbefore described to said Sprague.

"(13) That said Wilhite and his family continued to occupy the said lots, hereinbefore described, which he

purchased from said L. C. Martin on March 26, 1892, until he moved with his said family upon the premises described in plaintiff's petition, July 6, 1893, and during all of said time from March 26, 1892, to July 6, 1893, he and his family occupied no other place as a home or place of residence.

"(14) On the 11th day of December, 1905, said defendant Randolph caused an execution to issue on said judgment, out of the office of the clerk of this court, to the sheriff of Lyon county, Kansas, and directed the defendant S. C. Hinshaw, who is sheriff of Lyon county, Kansas, to levy the same upon the premises described in plaintiff's petition.

"(15) That said defendant Hinshaw intends to, and unless restrained by this court will, levy said execution upon said premises and proceed to advertise and sell the same to satisfy said judgment.

"(16) That on the 19th day of July, 1904, the said J. H. Wilhite, for a good and valuable consideration, sold and by good and sufficient deed conveyed to this plaintiff the real estate described in plaintiff's petition. That at the time of such conveyance the said J. H. Wilhite was in possession of and using and occupying the said premises as the home and homestead of himself and family."

Upon the trial the district court found the following additional facts:

"(1) Prior to the first of June, 1893, and prior to the purchase of the land in controversy from Alson Fowler, J. H. Wilhite entered into an oral agreement with E. F. Sprague, a contractor and builder of the city of Emporia, by the terms of which it was agreed that in case Wilhite could buy said land Sprague would furnish labor and material sufficient to build a barn and finish and repair said residence-house, and in payment for said labor and material Wilhite should convey said city residence property to Sprague by quitclaim deed, subject to said mortgage.

"(2) The plaintiff herein, the wife of the said J. H. Wilhite at that time, was present when said oral contract was made, and acquiesced therein.

"(3) On said June 1 said twelve acres were occupied by a tenant of the prior owner, who had thereon a growing crop.

"(4) Said Wilhite, contemporaneously with the pur-

chase of said land, bought the interest of said tenant, and immediately moved his live stock upon said land, and began to cultivate the crops and to oversee and assist in making certain improvements hereinafter named.

"(5) From June 1, 1893, to July 6, 1893, while said improvements were being made upon said twelve acres, the family of said Wilhite remained in the city residence, and the said Wilhite was with his family in the city residence at night and went back and forth from said city residence to said twelve acres each day, and during the time the plaintiff herein also expended time, work and labor from day to day upon said twelve acres in fitting and repairing the same for occupancy for a home."

The trial court held the judgment did not become a lien on the land, because of its homestead character, and granted an injunction. The defendants prosecute error.

The defendants in their argument place stress upon the words "occupied as a residence" in the homestead provision of the constitution. (Const., art. 15, § 9.) Wilhite and his family continued to occupy the city lots as a residence for a month after the rural tract was purchased. So it is said he had a homestead where he resided. To change a man's residence he must move and intend not to return. Here there was no removal, but only an intention to remove, for several weeks. So it is said the judgment of the district court would permit one homestead to be held by occupancy in fact and at the same time permit another to be held by an intention to occupy in the future. Cases insisting upon occupancy, like *Koons v. Rittenhause,* 28 Kan. 359, 362, cases denying the right to a homestead in separate tracts, like *Savings Bank v. Wheeler's Adm'r,* 20 Kan. 625, 632, and *Swenson v. Kiehl,* 21 Kan. 533, 534, and cases holding that to effect an abandonment of a homestead there must be a removal, like *Palmer v. Parish,* 61 Kan. 311, 59 Pac. 640, are cited. The argument is faulty because it ignores too many important factors

essential to a correct solution of the problem. The intention to occupy the new place was not a mere purpose to be carried out sometime in the future, but it was a definite present intention to occupy at once. The circumstances were such that it was impossible to effect an immediate change. Adequate efforts were diligently made to remove the obstacles to immediate occupancy. No more time was consumed than the work to be done required, and as soon as the necessary arrangements could be made the new home was occupied.

None of the cases cited is controlling. In the Koons case a man left his wife, all the family he had, in New York, came to Kansas, obtained title to a tract of government land, occupied it alone for four years, and sold it. Meantime he and his wife entertained the purpose that at sometime she would come to Kansas and reside with him on the land. Nearly a year after the sale she came, and in a suit to set aside the deed because executed without her consent it was held the purchaser obtained title. The intention to occupy was indefinite; no energetic effort was made to execute it; the reasonable time allowed by the law in which to effect occupancy of a homestead lapsed, and still time went on and on; and the land was not occupied at all by the family of the owner while he held title.

In the case of *Savings Bank v. Wheeler's Adm'r*, 20 Kan. 625, a man left his farm in Atchison county, which he rented to a tenant for two years, and removed with his family to property which he owned in a city in Doniphan county. His purpose was to sell off his stock and farm machinery, rent the farm for three or four years, educate his children, and then stock up and go back to the farm. He occupied the city property as a residence, where he surrounded himself with all the ordinary insignia of a home, and he taught school, voted and held office in the city. Failing to make a satisfactory lease of the farm to begin when the lease already in existence expired, he determined to move back

and take possession at the end of the lease, and so notified the tenant, but he died before the time arrived. Eighteen months later the widow and children returned to the farm. The court held it was liable for the payment of debts. The man's conduct conclusively proved he had changed his residence to the city. The purpose to return to the farm at some indefinite time could not change the fact that he had established his residence in the city with the present purpose of making it his home. This being true, he could not hold the farm as a homestead through a tenant. To make the farm his homestead again it was necessary that he should abandon the one he had acquired in the city. His unfulfilled intention to do this was unavailing, and the widow's return could not free the land from the liability for debts which had attached at her husband's death.

In the case of *Swenson v. Kiehl*, 21 Kan. 533, the landowner claimed he purchased with the intention of making the land a homestead, but he took no steps in that direction. Some excuses were offered for the failure to occupy, but this court was unable to say whether the trial court credited the testimony, the facts not having been found specially. The principle applied in deciding the case was stated thus:

"We are aware that occupancy is not always possible at the instant of purchase, and that, as we have heretofore said, a reasonable time is allowable in which to prepare for and complete the removal to and occupation of the intended homestead. But the purchase must be for the purpose and with the intent of present and not simply of future use as a residence. A party may not have two homesteads. If he occupies one dwelling as a residence, and intends to continue such occupation for the present, a purchase of another residence does not invest that with the character of a homestead simply because of an intent at some future and more convenient time to make it his home." (Page 534.)

The syllabus of the case of *Palmer v. Parish*, 61 Kan. 311, 59 Pac. 640, is sufficient to distinguish it:

"An owner of property occupied as a homestead who

has under consideration a change of residence, and who, with his wife, starts out in an effort to find a new home, but with the intention to return and continue to occupy the homestead if he can not make a satisfactory exchange, and who leaves members of the family at the home, as well as household effects, stock, and other property, does not thereby forfeit his homestead right, nor will the property be devested of the homestead character until there is a permanent removal with an intention not to return to the same."

In this case Wilhite purchased the country tract on June 1, 1893, with the present intention of making it his homestead, which intention he immediately proceeded to execute. Before he purchased he arranged to make the premises suitable for occupancy if he should buy. It was necessary to build a barn and to repair the dwelling-house. The entire time from June 1 to July 6 was consumed in making these improvements, and as soon as they were completed he moved on the land and thereafter occupied it as his homestead. Under these circumstances, by a fiction adopted to carry out the purpose of the constitution, to make the law reasonable and tolerable and to accomplish manifest justice, the occupancy on July 6 related back to June 1 and the premises became impressed with the homestead character as of the date they would have been occupied if they could have been occupied.

The case resembles that of *Gilworth v. Cody*, 21 Kan. 702. Cody purchased land on December 1 intending at the time to make it his homestead at once. Immediately he commenced to dig a cellar and haul stone for a house. On December 5 he started to a neighboring town for material for a dwelling. On December 7 he returned with such material and unloaded it adjoining the premises. On December 28 the house was completed and he moved in with his family. It was held that an attachment levied on December 7 gave no lien. After citing authorities the court said:

"These decisions clearly establish the doctrine that our homestead laws, beneficial in their operation and

founded in a wise policy, should be liberally construed, so as to carry out their spirit. Considered in this light, in this case there was such an actual purpose and intention of present occupancy, accompanied with such acts on the part of the defendant in error in the commencement and completion of his dwelling, together with his residence therein with his family, that this might reasonably be held to amount in substance to actual occupancy at the date of the levy. While therefore we hold, within the terms of the law, that occupation is an essential element to secure a homestead inviolability, under the exceptional circumstances which appear from the findings of the court the intentions and acts of the purchaser of the land in controversy may be construed into a legal equivalent of actual occupancy of such premises. Law is entitled to and can command respect only when it is reasonable and adapted to the ordinary conduct of human affairs, and the construction we have given above to the provisions securing homestead exemptions is certainly within their spirit, and more in consonance with a reasonable interpretation thereof, than if we adopted the opposite conclusion." (Page 705.)

In the case of *Edwards v. Fry*, 9 Kan. 417, it was said:

"We know the spirit which animates the people of Kansas, the makers of our constitution and laws, on this homestead question. We note the care with which they have sought to preserve the homestead inviolate to the family. We have no disposition to weaken or whittle away any of the beneficent constitutional or statutory provisions on the subject. We know that the purchase of a homestead, and the removal onto it, can not be made momentarily cotemporaneous. It takes time for a party in possession to move out, and then more time for the purchaser to move in. Repairs may have to be made, or buildings partially or wholly erected. Now, the law does not wait till all this has been done, and the purchaser actually settled in his new home, before attaching to it the inviolability of a homestead. A purchase of a homestead with a view to occupancy, followed by occupancy within a reasonable time, may secure *ab initio* a homestead inviolability." (Page 425.)

In addition to what has already been quoted from *Swenson v. Kiehl,* 21 Kan. 533, the court there said:

"We do not mean that a party occupying a residence under a lease must of necessity wait until the *exact instant* of the termination of that lease before making arrangements for his future home. The law favors homesteads; and arrangements made at about the time of the termination of such lease or occupation, and with a view thereto, are, for the purposes of a homestead question, considered as made cotemporaneous with such termination—but with this reasonable limitation: a party who has one home can not impart to another residence which he may purchase the character of a homestead, and thereby secure its exemption from judicial process by the mere intent at some future time to occupy it as a residence of himself and family." (Page 534.)

In the case of *Loan Association v. Watson,* 45 Kan. 132, 25 Pac. 586, it was said:

"It is well settled in this state and other states that where a person, the head of a family, purchases a piece of land, intending to make it a homestead for himself and family and to occupy it as such at once, and follows such intention up by immediate occupancy of the premises as a homestead, such land is all the while protected by the exemption provision from judgment liens." (Page 134.)

In the case of *Upton v. Coxen,* 60 Kan. 1, 55 Pac. 284, 72 Am. St. Rep. 341, it was said:

"It is settled that the purchase of a home, with the intention to occupy it as a homestead, followed by actual occupancy within a reasonable time, may impress it *ab initio* with homestead character and inviolability." (Page 3.)

In the case of *Stowell v. Kerr,* 72 Kan. 330, 83 Pac. 827, it was said:

"On the purchase of a homestead there should be such occupancy as the situation warrants. To preserve the homestead character full occupancy as a residence should be taken within a reasonable time, and, if that is done, the occupancy will relate back to the time when

the property was purchased with the *bona fide* intent to make it a homestead." (Page 332.)

The same principles apply to the relinquishment that govern the acquisition of a homestead. The homestead character of the city lots ended when for purposes of the law the occupancy of the country place is treated as having begun. At that time the city lots had been sold. The agreement was that the lots should be deeded in consideration of improvements to be put upon the new homestead. This agreement was made in good faith and was promptly executed in good faith by both parties. It makes no difference to the defendant that it was oral. The statute of frauds does not render an oral agreement for the sale of land impossible of voluntary performance. It merely provides that no action shall be brought to charge a party to the contract. If such a contract be performed and a deed of conveyance be executed and delivered in consummation of it the deed will relate back to the origin of the transaction, as in other cases. (29 A. & E. Encycl. of L. 817.) There is substantial evidence in the abstract to show acquiescence on the part of the plaintiff in the oral agreement to sell the city lots, and her subsequent execution of the deed ratified the agreement and made it binding from the beginning.

In litigation with the purchaser of the city lots the defendant was denied a lien upon them by the southern department of the courts of appeals, apparently on the ground the old homestead was not relinquished until the new one was occupied in fact. (*Randolph v. Sprague,* 10 Kan. App. 583, 63 Pac. 446.) Neither the plaintiff nor her husband was a party to that litigation, and the facts upon which the decision was rendered were materially different from those now under consideration. It would be unprofitable now to inquire into the soundness of the judgment of the court of appeals.

Upon the facts before it the district court correctly determined the rights of the parties to the present suit, and its judgment is affirmed.

GRAVES, J., not sitting.